UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALTANATURAL CORPORATION,<br><br>            Appellee,<br><br>   v.<br><br>NEW INVESTMENTS INC.,<br><br>            Appellant. | CASE NO. 2:16-cv-01368-RAJ<br><br>ORDER |

    This matter comes before the Court on appellant, New Investments Inc.'s ("New Investments") appeal from the Bankruptcy Court's final judgment entered on August 26, 2016. Dkts. 1, 17, 18. Appellee, Altanatural Corporation ("Altanatural"), filed a brief in opposition, Dkt. 21, and New Investments filed a reply, Dkt. 22.

    New Investments filed for Chapter 11 bankruptcy and subsequently entered into a purchase agreement with Altanatural for the sale of its main asset --a hotel located in Kirkland, Washington (the "Property"). The deed for the sale of the Property did not identify a parking easement (the "Easement") granting the use of 14 parking spaces to a neighboring condominium complex. Altanatural did not discover the Easement until after closing. In addition, after closing, New Investment continued to occupy two guest rooms and storage space at the hotel, purportedly

without consent from Altanatural.

New Investments appeals the final judgment of the Bankruptcy Court, arguing that the Bankruptcy Court erred in: (1) calculating damages due to the easement; (2) justifying suspension of performance; (3) interpreting the promissory note and applying the equitable doctrine of recoupment; and (4) applying the waiver/estoppel defense with respect to New Investments' occupation of various guest rooms and storage space.

The Court affirms the Bankruptcy Court's decision. First, after concluding that there was a reasonable certainty as to the fact of damages, the Bankruptcy Court set the damages due to the Easement at $350,000, which was within the range of admissible evidence. Second, because New Investments' actions constituted a material breach, Altanatural was justified in suspending interest payments under the Promissory Note. Third, Altanatural was entitled to recoup the judgment against the principal balance of the Promissory Note, as the language waiving offset did not include claims that fell within the equitable remedy of recoupment. And finally, the Bankruptcy Court properly rejected New Investments waiver and estoppel defenses, and correctly found that New Investments did not have a right to occupy the hotel property after November 2014.

## BACKGROUND

For the most part, New Investments has not challenged on appeal the Bankruptcy Court's findings, so the Court draws the factual recitation from the Bankruptcy Court's findings of facts and conclusions of law entered on May 6, 2016 and oral ruling entered on August 18, 2016. Dkt. 18, DR 32 (findings of fact and conclusion of law); DR 44 (oral ruling). On February 4, 2013, New Investments filed a voluntary petition for Chapter 11 bankruptcy. Bankruptcy Case No. 13-bk-10948, Dkt. 1 at 1. New Investments' primary asset was real property including a hotel and restaurant, located at 12233 Totem Lake Way, Kirkland, Washington 98034 (the "Property"). *Id.*

On September 12, 2013, New Investments and Altanatural entered into Purchase and Sale Agreement and three separate addendums (the "PSA"), in which Altanatural agreed to purchase the Property from New Investments for $6,325,228.00. Dkt. 18, DR 32 at FF No. 1. Altanatural paid $3,000,000 of the purchase price as a down payment, and the remaining $3,325,228.00 in a promissory note (the "Promissory Note") executed in favor of New Investments, which was secured by a deed of trust against the Property. Dkt. 18, DR 32 at FF No. 2.

The PSA required New Investments to: (1) deliver a Special Warranty Deed ("Special Warranty Deed") to Altanatural conveying the Property with only those encumbrances permitted by the Special Warranty Deed and (2) deliver quiet possession of the Property and clear, marketable title at closing. Dkt. 18, DR 32 at FF Nos. 2, 3. The parties closed the sale on October 4, 2013 and the PSA was incorporated into New Investments' Second Amended Plan of Reorganization. Dkt. 18, DR 32 at FF No. 3.

The Special Warranty Deed did not identify a parking easement (the "Easement") that New Investments had granted to a neighboring condominium complex, Chelsea Court II, LLC. Dkt. 18, DR 32 at FF No. 6. The Easement granted exclusive use of 14 parking spots on the Property. Dkt. 18, DR 32 at FF Nos. 6-7. In the spring of 2014, Altanatural learned of the Easement. Dkt. 18, DR 32 at FF No. 6.

The parties agreed that New Investments' President, Shabnam Aziz, would train and assist Altanatural following the closing, and that she could occupy guest room 227 at the Property. Dkt. 18, DR 32 at FF No. 4. Altanatural did not give express consent for New Investments to occupy any other rooms. *Id.* Following the closing, New Investments and members of the Aziz family that owned New Investments continued to occupy ten storage rooms and guest rooms 153, 154, 227 and 228 at the Property. Dkt. 18, DR 32 at FF No. 5.

For several months until November 2014, the parties worked to resolve these issues. During this time, Dr. William Xiong, Executive Vice President of Altanatural, agreed to New Investments' use of the occupied storage rooms, offices, and guest rooms. Dkt. 18, DR 32 at FF No. 9. On November 13, 2014, Altanatural delivered a letter to New Investments and its counsel, demanding that New Investments pay for its use of the rooms, honor its warranties of title and indemnify Altanatural or otherwise have the Easement removed as encumbrance. Dkt. 18, DR 32 at FF No. 10.

After New Investments failed to address the defaults, Altanatural suspended its payments under the Promissory Note and withheld interest payments for November and December and the December 31, 2014 balloon payment. Dkt. 18, DR 32 at FF No. 11. Until that point Altanatural had made monthly interest payments on the Promissory Note, totaling over $180,000. Dkt. 18, DR 32 at FF No. 8. The parties negotiated a settlement for several months, and in March 2015 reached an agreement (the "Settlement Agreement") on the material terms of a resolution: a balloon payment of $2,990,000.00 (reduced from $3,325,228.00) from Altanatural to New

Investments; allocation of the payment in a manner proposed by New Investments; and a right for New Investments to use the hotel rooms on the Property through December 31, 2015. Dkt. 18, DR 32 at FF No. 17. However, the Bankruptcy Court determined that the Settlement Agreement was not enforceable, and therefore it was not approved. Dkt. 18, DR 32 at FF No. 18; DR 44 at 4.[1]

Between November 2014 and December 2015, storage rooms 1-7, 9, and 10 contained items that were associated with the hotel and/or were not occupied. Dkt. 18, DR 32 at FF No. 18. Storage room 8 was occupied for 377 days and contained non-hotel items. Dkt. 18, DR 32 at FF No. 19. Guest rooms 153, 154, and 156 were not occupied, and it is unclear whether the two offices were occupied in a manner that would preclude use by Altanatural. *Id.* From November 2014 to October 2015, Shabnam Aziz occupied guest room 288, and her parents, Sheraly Aziz and Zeri Aziz, occupied guest room 227. Dkt. 18, DR 32 at FF No. 20.

On July 23, 2015, Altanatural filed an adversary proceeding against New Investments. Adversary Case No. 15-ap-01188, Dkt. 1. On August 20, 2015, Altanatural moved for partial summary judgment, claiming a breach of warranty on the Special Warranty Deed and the PSA. Dkt. 18, DR 2. On October 8, 2015, the Bankruptcy Court held oral arguments on Altanatural's motion for partial summary judgment. Dkt. 18, DR 41. On November 12, 2015, the Bankruptcy Court entered an order granting Altanatural's motion in part, leaving the issue of damages for trial. Dkt. 18, DR 14.

Trial was held on March 10 and 11, 2016. Dkt. 18, DR 42. On May 6, 2016, the Bankruptcy Court entered findings of fact and conclusions of law following trial. Dkt. 18, DR 32. On July 21, 2016 the Bankruptcy Court held a subsequent hearing to set the judgment amount and the parties submitted additional briefing. Dkt. 18, DR 43. On August 18, 2016, the Bankruptcy Court made an oral ruling that it incorporated into its findings of fact and conclusions of law. Dkt. 18, DR 44. The Bankruptcy Court then entered a judgment against New Investments in the principal amount of $415,848.00 that would be recouped against the remaining payments due under the Promissory Note. Dkt. 18, DR 44 at 21. The Bankruptcy

---

[1] It is not clear from the record on appeal, or the Court's own review of the bankruptcy proceedings why the Settlement Agreement was not approved. A hearing was held on Altanatural's motion to enforce and approve the settlement agreement on June 19, 2015, wherein the Bankruptcy Court denied the motion, but it does not appear that an order was subsequently entered. *See* Bankruptcy Case No. 13-10948, Dkts. 389-400, docket entry dated June 19, 2015.

Court stayed enforcement of the judgment pending the appeal, but set aside $230,000 to pay the judgment and any fees and costs that Altanatural accrued. Dkt. 18, DR 49.

New Investments promptly appealed. Dkt. 1.

**STANDARD OF REVIEW**

District courts have jurisdiction to hear appeals from a final judgment and order in a bankruptcy proceeding. *See* 28 U.S.C. § 158(a)(1). A district court reviews the bankruptcy court's conclusions of law de novo and reviews determinations of fact for clear error. *See In re Crow Winthrop Operating P'ship*, 241 F.3d 1121, 1123 (9th Cir. 2001) (citing *In re Video Depot, Ltd.,* 127 F.3d 1195, 1197 (9th Cir. 1997)).

The issues raised on appeal are limited to those addressed below. *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[A]n appellate court will not consider issues not properly raised before the [trial] court."); *Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 546 n. 15 (9th Cir. 1991) ("[A]n appellate court will not reverse a district court on the basis of a theory that was not raised below."). The court can affirm the bankruptcy court's ruling on any basis supported by the record. *See, e.g.*, *Dittman v. California*, 191 F.3d 1020, 1027 n.3 (9th Cir. 1999).

**DISCUSSION**

**I.  Calculation of Damages due to Easement**

First, New Investments contends that the Bankruptcy Court erred in determining the amount of damages sustained due to the breach of warranty under the Special Warranty Deed. Dkt. 17 at 16-17. The parties agree that this issue is a mixed question of law and fact, and that the Bankruptcy Court's finding of fact 31 that the value of the Property was diminished by $350,000 should be reviewed based on clear error and conclusion of law 12 that the damages calculation was the cost of building under unit parking spots should be reviewed *de novo*. *See* Dkt. 17 at 6, Dkt. 21 at 4.[2]

The crux of New Investments' attack on appeal is that Altanatural failed to establish damages with "reasonable certainty," Dkt. 17 at 11-20, but this standard focuses more on

---

[2] The Court refers to the CM/ECF page numbers.

determining the *fact* of damages, rather than fixing the amount of damages within a mathematical certainty. The Washington Supreme Court has explained:

> There is a clear distinction between the measure of proof necessary to establish the fact that the plaintiff has sustained some damage and the measure of proof necessary to enable the jury to fix an amount. Formerly, the tendency was to restrict the recovery to such matters as were susceptible of having attached to them an exact pecuniary value, but it is now generally held that the uncertainty that prevents a recovery is *uncertainty as to the fact of the damage and not as to its amount and that where it is certain that damage has resulted the mere uncertainty as to the amount will not preclude the right of recovery.*

*Gaasland Co, Inc. v. Hyak Lumber & Millwork, Inc.*, 42 Wash. 2d. 705, 713 (1953) (emphasis in original).

Therefore, once a non-breaching party demonstrates the *fact* of damages, a court will allow for a certain amount of flexibility in determining the amount of damages. *See Alpine Indus., Inc. v. Gohl,* 30 Wash. App. 750 (1981) (quoting *Gaasland,* 42 Wash. 2d at 712, 713). This is in accordance with "the long-held view that a defendant should not profit from the difficulty in proving exact damages, particularly if his breach contributes to that difficulty." *Milgard Tempering, Inc. v. Selas Corp. of Am.,* 902 F.2d 703, 710 (9th Cir. 1990) (citing *Butcher v. Garrett–Enumclaw Co.,* 20 Wash. App. 361, *rev. denied,* 91 Wash. 2d 1004 (1978) (quoting 5 Corbin on Contracts § 1023, at 133); *Box v. Crowther,* 3 Wash. App. 67 (1970) (relying upon Restatement of Contracts § 331, comment a (1932))).

Nevertheless, although the "precise amount of damages need not be shown with mathematical certainty," damages must still be supported by competent evidence. *Interlake Porsche & Audi, Inc. v. Bucholz,* 45 Wash. App. 502, 510 (1986) (citing *Haner v. Quincy Farm Chems., Inc.,* 29 Wash. App. 93, 97 (1981), *aff'd,* 97 Wash. 2d 753 (1982) and *Hyde v. Wellpinit Sch. Dist.,* 32 Wash. App. 465, 470 (1982)). To be sufficient, evidence of damages must afford "a reasonable basis for estimating the loss and [must] not subject the trier of fact to mere speculation or conjecture." *Id.* (internal citation omitted).

Here, the parties do not dispute that Altanatural established damages in that the value of the Property had been diminished when New Investments failed to disclose the Easement. Dkt. 17, 21. In determining the amount of damages, the Bankruptcy Court adopted the testimony of

Mark Lukens, a hotel appraiser, and found that the fair market value of the Property was diminished by $350,000 due to the Easement. Dkt. 18, DR 32 at FF No. 31, CL No. 12.

New Investments argues that Mr. Lukens' testimony that it would cost approximately $350,000 to build 14 under unit parking spaces was not based on tangible evidence. Dkt. 17 at 18-20. Altanatural contends that the damage award was within the range of damages testified by Mr. Lukens and Shabnam Aziz, New Investments' officer.[3] Dkt. 21 at 10.

Mr. Lukens was qualified as an expert witness in the field of property appraisals, specializing in hospitality appraisals such as hotels, and was qualified to provide his opinion on the diminution of value caused by the Easement. Dkt. 18, DR 32 at FF No. 25. Mr. Lukens testified that the diminution in value to the Property was $775,000 based on the loss of 14 parking spots. Dkt. 18, DR 32 at FF No. 26, 30. This amount was calculated by considering the addition of 20 hotel units to the Property, which was the highest and best use of the Property and was also consistent with what both New Investments and Altanatural had intended for the Property. Dkt. 18, DR 32 at FF No. 26 (the land on which the Property sits is larger than required for the Property's current size). Mr. Lukens testified that because of the Easement, adding 20 units to the Property would effectively leave the Property 14 parking spaces short. Dkt. 18, DR 32 at FF No. 27-30. However, he testified that those spaces could be incorporated into the construction of the additional 20 units through under unit parking, and that it would cost approximately $25,000 to $30,000 build each under unit parking space. Dkt. 18, DR 32 at FF Nos. 27-31; DR 42 at 228. Mr. Lukens was qualified to testify as to the diminution of value of the Property, and also noted that he consulted several contractors about under unit parking in the area. Dkt. 18, DR 42 at 228-229; DR 32 at FF No. 24. *See also* Fed. R. Evid. 702; Wash. R. Evid. 702.

Shabnam Aziz, President of New Investments, testified that the diminution of value caused by the Easement was between $41,000 and $50,000. Dkt. 18, DR 42 at 370. This was based on a calculation that one acre or 43,000 square feet of land costs approximately $1,000,000 and the Easement resulted in a loss of 14 parking spaces or approximately 1,700 to 2,100 square feet (differences accounting for compact versus standard parking spaces). *Id.* Shabnam Aziz also

---

[3] With respect to New Investments argument that the under unit parking was "not feasible," New Investments mischaracterizes Mr. Lukens' testimony. Dkt. 17 at 17-18. Mr. Lukens did not testify that the actual construction of the under unit parking was not feasible, rather, he found that the cost of $25,000 per parking space made the under unit parking not feasible. Dkt. 18, DR 42 at 228.

testified that the value was double the $100,000 consideration that her father calculated for the parking spaces. *Id.* As the President and an officer of New Investments, Shabnam Aziz was competent to testify as to the value of the Property. Against the backdrop of Federal Rule of Evidence 701, "[c]ourts indulge a common-law presumption that a property owner is competent to testify on the value of his own property." *Christopher Phelps & Assocs., LLC v. Galloway,* 492 F.3d 532, 542 (4th Cir. 2007); *See White v. Atlantic Richfield Co.,* 945 F.2d 1130, 1133 (9th Cir. 1991) ("An owner may testify as to the reasonable value of the land. The weight of such testimony is, of course, affected by the owner's knowledge of circumstances which affect value, and as an interested party, it is for the jury to evaluate the credibility of his testimony.") (internal citations and quotation marks omitted).

Therefore, the evidence presented included damages calculated on the high side at $775,000 and on the low side between $41,000 and $50,000. The Bankruptcy Court chose a middle ground at $350,000, based largely on New Investments' cross-examination of Altanatural's expert witness as to the cost of constructing additional parking spaces. Although the amount of damages was effectively reduced through this cross-examination, Altanatural cannot then argue that there is no basis for the court's decision. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. *United States v. Yellow Cab Co.,* 338 U.S. 338, 342 (1949); *see also Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,* 456 U.S. 844, 855 (1982). The clearly erroneous standard does not entitle a reviewing court to reverse the finding of the trier of fact simply because it would have decided the case differently. *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 573 (1985). The reviewing court oversteps the bounds of its duty if it undertakes to duplicate the role of the lower court. *Id.* "In applying the clearly erroneous standard to the findings of a district court sitting without a jury, appellate courts must constantly have in mind that their function is not to decide factual issues *de novo*." *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 123 (1969).

Based on the review of the record and applying the rule of reasonable certainty, the Court cannot say that the Bankruptcy Court's interpretation of the evidence was clearly erroneous.

Considering the evidence presented and the inferences supporting it, and without weighing evidence or assessing witness credibility, the Bankruptcy Court's account of the

evidence is plausible in light of the record viewed in its entirety, and this Court will not reverse it.

## II. Justification for Suspension of Performance – Election of Remedies

Next, New Investments challenges Altanatural's suspension of payments under the Promissory Note. Dkt. 17 at 20-23. Altanatural argues that there was no error. Dkt. 21 at 16-21. A district court reviews the Bankruptcy Court's conclusions of law de novo. *See In re Crow Winthrop Operating P'ship*, 241 F.3d at 1123 (internal citation omitted).

The Bankruptcy Court found that New Investments materially breached the PSA and Special Warranty Deed and that interest did not accrue during the period that Altanatural suspended its payments under the Promissory Note. DR 32 at CL No. 13; Dkt. 18, DR 44 at 12-14. New Investments argues that the Bankruptcy Court misapplied the election of remedies doctrine, and that once Altanatural elected to suspend its performance it should have been barred from also receiving damages because suspension and damages are inconsistent, and Altanatural received a windfall. Dkt. 17 at 20-21. New Investments does not challenge any of the underlying findings of fact, and solely challenges conclusion of law 13, wherein the Bankruptcy Court held that Altanatural was legally justified in suspending payments under the Promissory Note because of New Investments' breach. Dkt. 18, DR 32 at CL No. 13. Altanatural contends that the Bankruptcy Court correctly relied on Washington contract law and case law from other federal circuit courts in finding that Altanatural was legally justified in suspending payments under the Promissory Note. Dkt. 21 at 17-18.

New Investments correctly argues that Altanatural could choose between continuing performance and ceasing performance. The injured party has the right to make that choice. *See* Dkt. 17 at 22-23 fn. 14 (citing *Cities Service Helex, Inc. v. United States,* 543 F.2d 1306, 1313 (Ct. Cl. 1976)). Thus, it follows that Altanatural could not cease performance under the contract but still retain benefits they received, but had not paid for; otherwise, the breach would work as an inequitable windfall for Altanatural. However, when the Bankruptcy Court found that New Investments' breach was material it did not excuse Altanatural's obligations under the PSA and Special Warranty Deed. Nor did Altanatural elect to terminate the PSA or Special Warranty Deed. Rather, the court found the accrual of interest on the Promissory Note was suspended until New Investment cured its material breaches. *See* Dkt. 18, DR 32 at CL No. 13; DR 44 at 12-14.

Neither Washington case law nor the Restatement (Second) (hereinafter "Restatement") on Contracts provide specific guidance as to the suspension of interest payments during a material breach. Thus, it appears that this issue is one of first impression for Washington courts. Nevertheless, the Bankruptcy Court's conclusion is supported by both Washington contract law and persuasive case law from the Tenth Circuit Court of Appeals. *In re Country World Casinos, Inc.*, 181 F.3d 1146, 1151-52 (10th Cir. 1999).

First, *Bailie Communications v. Trend Business Systems* summarizes the Restatement of Contracts regarding suspension of performance:

> "A material failure by one party gives the other party the right to withhold further performance as a means of securing his expectation of an exchange of performances." Restatement (Second) of Contracts § 241, Comment e (1981). … A material breach suspends the injured party's duties until the breaching party cures the default. Restatement 2d §§ 237, 241. The breaching party has a reasonable time to cure, after which the injured party may either sue for total breach or rescind and obtain restitution. Restatement 2d §§ 242, 243, 373.

53 Wash. App. 77, 81 (1988).

Washington contract law makes it clear that a material breach suspends the non-breaching party's duties until the breaching party cures the default. *See id.* These contract principles support the conclusion that New Investments' material breach entitled Altanatural to withhold future performance in order to secure an expectation of an exchange of performances. *See* Restatement 2d § 241, Comment e (1981). Here, the PSA had been almost entirely performed – the sale of the Property closed in October 2013, and Altanatural paid $3,000,000 as a down payment and executed the Promissory Note for $3,325,228.00. Dkt. 18, DR 32 at FF Nos. 2, 3. Altanatural received the Special Warranty Deed, operated the Property, hired staff, opened a restaurant, and made ten interest payments totaling over $180,000. *Id.* Without any further obligations from New Investments, Altanatural had no other recourse to retain an expectation of New Investments performance. *See* Restatement 2d § 241, Comment e (1981). Similarly, while rescission of the PSA and Special Warranty Deed was an option, it does not appear that the parties wished to rescind the PSA, or that it would have been practical for the Bankruptcy Court to order and enforce recession of the PSA. *See* Restatement 2d §§ 242, 243,

373; *Bailie,* 53 Wash. App. at 81; Dkt. 18, DR 41 at 7-8 (Counsel for Altanatural stated that Altanatural did not wish to rescind the PSA and wished to retain the Property).

Furthermore, a material breach suspends the injured party's duties until the default is cured, however, here, the Easement breach was not likely to be cured immediately. Nothing in the record suggests that the Easement was a mistake or that New Investments was working to remove the Easement as an encumbrance. Dkt. 18, DR 32; DR 44. *See* Restatement 2d §§ 237, 241; *Bailie,* 53 Wash. App. at 81. And lastly, this conclusion is also supported by the principle that "a party to a contract cannot claim its benefits where he is the first to violate its terms." *Western Plains Serv. Corp. v. Ponderosa Dev. Corp.,* 769 F.2d 654, 657 (10th Cir. 1985); *Navato v. Sletten*, 560 F.2d 340 (8th Cir. 1977); *J.L. Cooper & Co. v. Anchor Sec. Co.,* 9 Wash. 2d 45, 73, 113 P.2d 845 (1941) (party with unclean hands cannot recover in equity.). Because New Investments was breaching party, it should not be able to recover benefits of the interest payments since it was in material breach.

Moreover, in the absence of binding precedent, the Court looks to other jurisdictions for persuasive authority. *See Arizona Elec. Power Coop., Inc. v. Berkeley,* 59 F.3d 988, 991 (9th Cir. 1995) (quoting *In re Kirkland,* 915 F.2d 1236, 1239 (9th Cir. 1990). The Tenth Circuit held that interest does not accrue on a promissory note while the obligor has justifiably suspended payments. *In re Country World Casinos, Inc.*, 181 F.3d at 1151-52. Although *Country World Casinos* is not binding on this Court, or the Bankruptcy Court, the Court is guided by its line of reasoning as well as the fact that it squarely addresses identical issues to the instant case. In *Country World Casinos,* a purchaser of real property executed a seller-financed promissory note that accrued interest per annum. *Id.* at 1148. As part of the transaction, the seller was required to remove an encumbrance against title by a certain date, but failed to do so. *Id.* at 1148. The buyer suspended payments under the promissory note for a year, and the parties disputed whether interest should have accrued during the legally-justified suspension. The Tenth Circuit held that:

> [I]nterest should have been suspended while [obligor] justifiably withheld its monthly payments. It is clear that the eight-percent interest on [obligor's] principal indebtedness was a benefit to [obligee]…[T]o allow the accrual of interest from May of 1995, when [obligor] justifiably withheld payment, until May of 1996, when [obligor] prepaid the principal would penalize [obligor] while benefitting [obligee]. Thus we hold that interest should have been suspended during this time.

*Id.* (internal citations and quotations omitted).

Therefore, although New Investments argues that Altanatural received a windfall, New Investments' breaches would be unfairly rewarded if it received interest payments while Altanatural justifiably suspended performance. After consideration of Washington contract law and persuasive case law from the Tenth Circuit, the Court finds no clear error in the Bankruptcy Court's finding that Altanatural was justified in suspending payments under the Promissory Note and that its election of remedies did not prohibit suspension and damages. Thus, the Court affirms Conclusion of Law 13.

### III. Interpretation of Language of Promissory Note and Recoupment

New Investments argues that the Bankruptcy Court erred in finding judgment against it in the amount of $415,848 and that the judgment should be recouped against the principal balance of the Promissory Note. Dkt. 17 at 23-28. New Investments contends that the Bankruptcy Court used the "specialized bankruptcy definitions of 'setoff' and 'recoupment'" in its interpretation of the Promissory Note, and failed to apply Restatement of Contracts § 203 (a) (1981) in interpreting the meaning of the operative language of the Promissory Note. *Id.* at 25-26. Altanatural argues that the Bankruptcy Court properly held that Altanatural was entitled to recoupment of its judgment against the Promissory Note, because the Bankruptcy Court's interpretation was consistent with the language of the Promissory Note and the circumstances of the parties at the time of the execution. Dkt. 21 at 21-23. A district court reviews the Bankruptcy Court's conclusions of law de novo. *See In re Crow Winthrop Operating P'ship*, 241 F.3d at 1123 (internal citation omitted). The Bankruptcy Court held that Altanatural was entitled to judgment against New Investments in the total amount of $415,848 and that the judgment should be recouped against the principal balance owing on the Promissory Note. Dkt. 18, DR 32 at CL No. 14. The Bankruptcy Court explained its finding, stating that the principal balance of the Promissory Note was stipulated in the pretrial order to the amount of $3,325,228, and that in April 2015, Altanatural deposited $2,900,000 to be applied to the Promissory Note. Dkt. 18, DR 44 at 17. The Bankruptcy Court held that recoupment was appropriate because Altanatural's claims against New Investments were premised on the same transactions as New Investments' breaches. *Id.* The Bankruptcy Court also held that because Altanatural's claims against New Investments resulted in damages that may be recouped against the balance owing to Altanatural,

no interest runs on the recouped amounts. *Id.* at 17-18. Without recouping against the balance owed to Altanatural, Altanatural would have overpaid by $80,620, plus the amount of any allowed legal fees and costs. *Id.* Dkt. 18, DR 32 at FF No. 17, CL No. 14 (The overpayment of $80,620 is derived from the following calculation: Altanatural's payment of $2,900,000.00 left a balance of $335,800.00 in principal. After applying the $415,848.00 judgment, there is a remaining $80,048.00 remaining owed to Altanatural.)

Further, the Bankruptcy Court held that the section 10 of the Promissory Note did not preclude recoupment of Altanatural's damages. Dkt. 18, DR 44 at 18. Section 10 of the Promissory Note provided:

> ¶ 10 Waiver. All parties to this Note, whether Borrower [Altanatural], principal, surety, guarantor, endorser, or any other party, hereby jointly and severally waive any right of offset Borrower may now or hereafter have against Lender [New Investments] or its successors and assigns, and also waive presentment for payment, demand, protest and notice of dishonor, protest, and demand, and all other notices.

Dkt. 18, DR 46, Ex. P-17. The court reasoned that offset is a remedy for damages incurred in an unrelated transaction, whereas recoupment nets amounts owed on the same transaction. Dkt. 18, DR 44 at 18. "Precluding recoupment in an agreement would be almost nonsensical and, at the least, not inferred by the use of the term offset in the note." *Id.*

Recoupment involves "netting out debt," *Oregon v. Harmon (In re Harmon),* 188 B.R. 421, 425 (9th Cir. B.A.P. 1995), and " 'is the setting up of a demand arising from the *same transaction* as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim.' " *Newbery Corp. v. Fireman's Fund Ins. Co.,* 95 F.3d 1392, 1399 (9th Cir. 1996) (quoting 4 *Collier on Bankruptcy,* ¶ 553.03, at 553–15 (15th ed. 1995)) (emphasis in original). It is allowed "because it would be inequitable not to allow the defendant to recoup those payments against the debtor's subsequent claim." *Newbery,* 95 F.3d at 1401; *Long Term Disability Plan of Hoffman–La Roche, Inc. v. Hiler (In re Hiler),* 99 B.R. 238, 243 (Bankr. D. N.J. 1989) ("[T]he application of recoupment goes to the equity of the claim.").

The justification for the defensive use of recoupment in bankruptcy is that there is no independent basis for a "debt," and therefore there is no "claim" against estate property. *Harmon,* 188 B.R. at 425; § 101(5) (claim is a "right to payment" or "right to an equitable

remedy"); § 101(12) (" 'debt' means liability on a claim"). Since recoupment is neither a claim nor a debt, it is unaffected by either the automatic stay or the debtor's discharge. *Id.; Newbery,* 95 F.3d at 1399–1400; § 524. In recoupment, the respective claims may arise either before or after the commencement of the bankruptcy case, but they must arise out of the same transaction. *Newbery,* 95 F.3d at 1399.

In contrast, the defining characteristic of setoff or offset is that "the mutual debt and claim ... are generally those arising from *different* transactions." 4 *Collier on Bankruptcy* ¶ 553.03, at 553–14 (15th ed. 1995) ("*Collier*"); *Newbery*, 95 F.3d at 1398. Setoff in bankruptcy is governed by 11 U.S.C. § 553. In bankruptcy, the primary difference is that the limits placed on setoff under section 553 generally do not apply to recoupment claims. For instance, that "[t]he chief importance of the recoupment doctrine in bankruptcy is that, unlike setoff, recoupment is often thought not to be subject to the automatic stay." *Newbery,* 95 F.3d at 1399 (quoting *Collier* ¶ 553.03, at 553–15—553–16 n. 5 (internal citations omitted)).

New Investments argument that the Bankruptcy Court's interpretation of "offset" was too "specialized" is foreclosed by the unambiguous language of the Promissory Note. Dkt. 17 at 25. The term "offset" when construed with the circumstances of the case, encompasses the bankruptcy definition of setoff or offset. *See Mayer v. Pierce County Med. Bureau,* 80 Wash. App. 416, 420 (1995) ("In construing a written contract, the basic principles require that (1) the intent of the parties controls; (2) the court ascertains the intent from reading the contract as a whole; and (3) a court will not read an ambiguity into a contract that is otherwise clear and unambiguous.").

Indeed, the parties negotiated the Promissory Note in the context of New Investments' bankruptcy proceeding. *See* Dkt. 18, DR 32 at FF Nos. 1-3. Given this, the Bankruptcy Court did not err in determining that the term "offset" did not include recoupment as defined under the Bankruptcy Code. Nothing in the language of section 10 of the Promissory Note suggests that the parties intended the phrase "offset" to mean anything other than what they said. If the parties had wished to waive the remedy of recoupment, they should have specifically stated so, and this Court cannot extrapolate what the Promissory Note does not contain. *See In re ETM Entm't Network, Inc.,* 154 F. App'x 4, 5 (9th Cir. 2005) (holding that the bankruptcy court properly applied the doctrine of recoupment in interpreting a contract provision that precluded offset, finding that "recoupment is not offset, and the parties could have said recoupment, if they meant

that."); *See Dice v. City of Montesano,* 131 Wash. App. 675, 685 (2006) (citing *St. Yves v. Mid State Bank,* 111 Wash. 2d 374, 378 (1988), *overruled on other grounds in Berg v. Hudesman,* 115 Wash. 2d 657 (1990) (If a contract can reasonably be interpreted in two ways, one of which is ambiguous and one of which is not, the latter interpretation should be adopted when each clause can be given effect.).

New Investments cites to *Braunstein v. Rockwell Int'l. (In re Broderick Co.),* 1996 Bank. LEXIS 105 (Bankr. D. Mass. Jan. 4, 1996) for the proposition that "recoupment" falls within the meaning of "any right of offset" which was prohibited under the Promissory Note. Dkt. 17 at 27-28. However, *Braunstein* does not support New Investments' argument. In *Braunstein,* the debtor and Rockwell had a reciprocal relationship – Rockwell provided raw steel to the debtor, and the debtor paid Rockwell; and the debtor in turn forged steel for Rockwell, and Rockwell paid the debtor. *Braunstein,* 1996 Bank. LEXIS 105 at *6. Rockwell's provision of steel to the debtor was governed by an agreement stating: "Rockwell's purchases of articles produced from the steel from [debtor] are to be made under terms and conditions separately agreed by the parties which shall be independent of this Agreement *and without any right of setoff.*" *Id*. at *7 (emphasis original). The court interpreted this provision as a waiver not only of the debtor's right to setoff but also of Rockwell, and that Rockwell therefore could not have satisfied the debt at issue by setoff. *Id.* at *8. The court also found that recoupment did not apply to the reciprocal obligations between the debtor and Rockwell, because the parties structured their contracts as separate and distinct, therefore, recoupment did not apply. *Id.* at *11-12.

In the instant case, however, the PSA, Promissory Note, and Special Warranty deed were all a part of the *same* transaction which was approved by the Bankruptcy Court. Dkt. 18, DR 32 at FF No. 1-3. Thus, the Bankruptcy Court appropriately applied the recoupment remedy. *See Newbery,* 95 F.3d at 1398-99 (internal citation omitted). Therefore, the Court concludes that the Bankruptcy Court did not err in finding that section 10 of the Promissory Note only waived the right to setoff or offset, and did not waive the right to recoupment. The Court affirms the Bankruptcy Court's finding that the judgment should be recouped against the principal balance of the Promissory Note.

**IV. Waiver/Estoppel Defense on Property Occupation**

Lastly, New Investments contends that the Bankruptcy Court erred in finding that the fair value for its post-closing occupancy of storage and guest rooms was $65,848, and failed to

ORDER - 15

consider New Investments defenses of equitable estoppel and waiver on the Property occupation claim. Dkt. 17 at 28-32. Altanatural argues that New Investments failed to challenge the underlying findings of fact on appeal and failed to submit any evidence that controverts these findings. Dkt. 21 at 25-26.

The Bankruptcy Court determined that from mid-November 2014 through December 2015, storage room 8 contained non-hotel items and was occupied for 377 days, guest room 228 was occupied by Shabnam Aziz, and guestroom 227 was occupied by Shabnam Aziz's parents. Dkt. 18, DR 32 at FF Nos. 19-20; CL Nos. 7-8. Based on the testimony of Dr. Xiong, the court found that the cost of renting equivalent offsite storage approximated at $10 per day per storage room. *Id.* at FF No. 23. The court determined that the fair rental value of the guest rooms occupied by New Investments is the average daily date plus $15.00 to account for the quality of the rooms per day. *Id.* at FF No. 22. The court concluded that New Investments breached the PSA and Special Warranty Deed by occupying the guest rooms and storage rooms after Altanatural's November 13, 2014 letter until December 2015 and was entitled to damages in the amount of $65,848. *Id.* at FF No. 19, CL No. 5-9.

New Investments specifically, and solely, challenges the Bankruptcy Court's conclusion of law 9, in which the court held: "The fair rental value owed to Altanatural for the occupation of the storage room and guest rooms is $65,848." Dkt. 17 at 7, 28; Dkt. 18, DR 32 at CL No. 9. Although New Investments acknowledges that conclusion of law 9 is supported by findings of fact 19-23 and conclusions of law 5-8, it does not challenge any other findings of fact or conclusions of law. *See id.* Therefore, the Court accepts as correct the findings of fact that New Investments has not challenged on appeal. *Sachan v. Huh (In re Huh),* 506 B.R. 257, 272 (9th Cir. B.A.P 2014) (en banc); *see also Affordable Housing Dev. Corp. v. Fresno,* 433 F.3d 1182, 1193 (9th Cir. 2006) (stating that appellate court ordinarily will not consider matters "not specifically and distinctly argued in appellant's opening brief."); *In re Thorne,* 2015 WL 4072403, at *4 (9th Cir. B.A.P. July 2, 2015).

Accepting as true the finding that Altanatural did acquiesce to use of the Property until November 2014, *see* Dkt. 18, DR 32 at FF No. 9, 10, none of the evidence cited to by New Investments, which references actions that took place prior to November 2014, *see* Dkt. 17 at 28-29, demonstrates that conclusion of law 9 is erroneous. Thus, New Investments' argument lacks any merit, as the evidence not challenged on appeal establishes that Altanatural consented

to New Investments' use of the Property prior to November 13, 2014. Therefore, New Investments has not persuaded the Court that the Bankruptcy Court's finding was in error. The Court affirms the Bankruptcy Court's finding on this issue.

V. **Attorneys' Fees on Appeal**

Altanatural seeks attorneys' fees in defending this appeal. Dkt. 21 at 26-27. When a party is entitled to an award of attorneys' fees in the court of first instance, as Altanatural was here, it is ordinarily entitled to recover fees incurred in successfully defending the judgment on appeal. *See* Dkt. 18, DR 44 at 18; *Voice v. Stormans, Inc.,* 757 F.3d 1015, 1016 (9th Cir. 2014); *In re Schwartz-Tallard,* 803 F.3d 1095, 1101 (9th Cir. 2015). Because the Court affirms the Bankruptcy Court's decision, Altanatural is therefore entitled to recover the attorneys' fees reasonably incurred in opposing New Investments appeal in the District Court.

## CONCLUSION

For the reasons set forth above, the Court affirms the Bankruptcy Court's decision.

Dated this 12th day of March, 2018.

*[signature: Richard A. Jones]*

The Honorable Richard A. Jones
United States District Judge